IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEITH KILBOURNE,

          Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

          Defendant.

No. 3:16-cv-00590-HZ

OPINION & ORDER

Merrill Schneider
SCHNEIDER KERR LAW OFFICES
P.O. Box 14490
Portland, Oregon 97293

    Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

1 - OPINION & ORDER

Lars J. Nelson
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Keith Kilbourne brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on April 25, 2005, alleging an onset date of July 1, 2004. See Tr. 38. His application was denied initially and on reconsideration. Tr. 118-22 (Initial); Tr. 114-16 (Reconsideration). On February 8, 2007, Plaintiff appeared via video, for a hearing before an Administrative Law Judge (ALJ). Tr. 1259-93. On May 23, 2007, the ALJ found Plaintiff not disabled. Tr. 59-71. The Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded for a new hearing. Tr. 167-70.

On November 19, 2010, Plaintiff appeared with counsel for the remand hearing. Tr. 1217-37. In a December 10, 2010 decision, the ALJ found Plaintiff not disabled. See Tr. 16. Plaintiff again requested review by the Appeals Council. This time, the Appeals Council remanded the claim for a new hearing due to the loss of the previous hearing's recording. Tr. 17.

A new hearing was held April 15, 2014. Tr. 1238-58. On May 22, 2014, the ALJ found Plaintiff not disabled. Tr. 13-37. The Appeals Council denied review. Tr. 9-12.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on having post-traumatic stress disorder (PTSD), hepatitis C, hepatitis B, and attention deficit hyperactivity disorder (ADHD). Tr. 743. At the time of the 2014 hearing, he was sixty-seven years old. Tr. 1242. He has a GED and has past relevant work experience as hardware sales representative. Tr. 1242, 1251.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date through his date of last insured of December 31, 2009. Tr. 20. Next, at step two, the ALJ determined that Plaintiff has severe impairments of PTSD, a generalized anxiety disorder, cannabis dependence, and a paranoid personality disorder with antisocial features. Id. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 20-21.

At step four, the ALJ concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but had the following nonexertional limitations: (1) performing simple, repetitive tasks; (2) occasional interaction with coworkers and supervisor; and (3) no interaction with the public. Tr. 21. With this RFC, the ALJ determined that Plaintiff was unable to perform

any of his past relevant work through the date of last insured. Tr. 35. However, at step five, the ALJ determined that Plaintiff, who was sixty-two years old on the date of last insured, was able to perform jobs that exist in significant numbers in the economy such as hand packager and janitor. Tr. 36-37. Thus, the ALJ determined that Plaintiff is not disabled. Tr. 37.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff contends that the ALJ erred by improperly rejecting the opinion of examining psychologist Ronald Duvall, Ph.D., and by improperly rejecting a Veterans Affairs (VA) disability rating.

/ / /

I.  Dr. Duvall

Dr. Duvall examined Plaintiff on June 17, 2010.  Tr. 685-98.  Dr. Duvall conducted a ninety-minute interview and reviewed approximately 500 pages of VA medical records.  Tr. 685.  He also administered several tests.  Id.  Although Plaintiff had been described as suffering from ADHD, Dr. Duvall saw no sign of this.  Tr. 686.  He observed that Plaintiff attended and concentrated well enough to follow the conversation and test instructions without any difficulty.  Id.  Plaintiff did not ask for repetition or explanation.  Id.  Dr. Duvall also questioned Plaintiff's reliability.  Id.  He noted "glaring inconsistencies" between what Plaintiff told him and what Plaintiff had told other evaluators about his alcohol history.  Id.  Dr. Duvall suggested that the discrepancy in this information should be considered as casting doubt not only on Plaintiff's alcohol use history but also on information related to other matters as well.  Id.

Dr. Duvall reported that the testing conditions were optimal in that it was quiet and undisturbed in his office.  Tr. 690.  Plaintiff applied himself well, did not complain, and did not become frustrated with failure on test items.  Id.  He persisted well.  He was slow to complete the MMPI-2 which is self-administered.  Id.  Based on testing, Dr. Duvall concluded that ADHD as a diagnosis was very unlikely.  Tr. 690-91; see also Tr. 693.  Dr. Duvall diagnosed Plaintiff as having PTSD, chronic and severe; generalized anxiety disorder, severe; cannabis dependence, severe; a history of alcohol dependence reported in complete remission; and a history of methamphetamine dependence, reported in complete remission.  Tr. 692.  Dr. Duvall assigned Plaintiff a Global Assessment of Functioning (GAF) score of 45-50.  Id.

Noting that the VA had accepted Plaintiff's claim for PTSD, Dr. Duvall stated that he was "inclined to defer to their expertise in this area."  Tr. 693.  Dr. Duvall remarked that Plaintiff

presented a history of combat during the Vietnam war that involved sufficient trauma to have left him with chronic PTSD.  Id.  Plaintiff was also able to detail the three main symptom clusters for a PTSD diagnosis required by the Diagnostic and Statistical Manual of Mental Disorders.  Id.  Dr. Duvall also noted, however, that Plaintiff had avoided direct treatment for this impairment by "simply announcing that he does not do groups,'" and that Plaintiff was unwilling to try psychotropic medications while remaining intransigent about continuing to smoke a "considerable amount of marijuana on a daily basis[.]"  Id.  Dr. Duvall also concluded that the testing and his clinical observation supported the presence of a deep and chronic anxiety.  Id.  Plaintiff's anxiety was so strong as to have a disorganizing influence on his personality.  Id.

In his report, Dr. Duvall stated that there was "no clear suggestion of secondary gain or exaggeration on the testing[.]" Tr. 694.  However, he cautioned that Plaintiff's "inconsistency in reporting important and relevant aspects of his history raises significant questions about his truthfulness generally."  Id.  He further wrote that Plaintiff's combination of diagnoses created serious obstacles to his working competitively and he specifically mentioned Plaintiff's paranoia, anxiety, hostility, and poor social skills.  Id.  Dr. Duvall described Plaintiff as "effectively unable to form adequate working relationships, or to adapt to competitive work conditions after so long a time as a person with low adaptive capacities."  Id.

Finally, Dr. Duvall completed a mental RFC assessment in which he found Plaintiff extremely limited in his abilities to interact appropriately with the public and to interact appropriately with supervisors and coworkers.  Tr. 697.  He also found a marked limitation in Plaintiff's ability to respond appropriately to usual work situations and to changes in a routine work setting.  Id.  His opinion was based on his clinical observation, the MMPI-2, and the history

of abject personal relationships. Id.

The ALJ discussed Dr. Duvall's opinion and gave it "some" but not "great" weight. Tr. 29. The ALJ found Dr. Duvall's diagnoses to be consistent with his examination results and with the VA records as a whole. Id. However, the ALJ found that in light of the VA records, there was clearly evidence of secondary gain in the record, including Plaintiff's prior drug seeking of Adderall and his apparent exaggeration of PTSD symptoms to the VA in pursuit of a 100% service-connected disability rating. Id. Next, the ALJ found that Dr. Duvall's opinion regarding Plaintiff's social limitations was inconsistent with Plaintiff's maintenance of a long marriage and his successful attendance at "SATP group" when ordered by the court as a condition of his DUI diversion program. Id.[1]

The ALJ also found that Dr. Duvall's opinion about Plaintiff's social limitations impeding competitive employment were not consistent with Plaintiff's prior work history. Tr. 30. The ALJ explained that although the VA determined that Plaintiff's PTSD worsened in 2004, the ALJ himself found that there were no worsening of PTSD symptoms after 2004. The ALJ further noted that Plaintiff had been consuming marijuana daily since the 1960s. Id. Nonetheless, the record showed that Plaintiff had been able to work at substantial gainful activity levels in the past despite his PTSD symptoms and his cannabis dependence. Id.

In evaluating a physician's opinion, the ALJ is required to consider the type of relationship (treating, examining, or nonexamining), the length of treatment, the nature and extent of the treatment relationship, if the opinion is supported and consistent with the record, and the practitioner's specialization. 20 C.F.R. § 404.1527. "'To reject [the] uncontradicted

---

[1] The SATP group appears to be part of a VA substance abuse treatment program.

opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Ryan v. Comm'r, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)) (brackets in Ryan). "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Id. (quoting Bayliss, 427 F.3d at 1216).

Plaintiff argues that the ALJ's reasons for failing to give full weight to Dr. Duvall's opinion are not legitimate. First, Plaintiff argues that the ALJ's finding that the record established secondary gain was an improper substitution of the ALJ's own opinion regarding Plaintiff's motivation and the validity of exam results because Dr. Duvall himself explicitly stated that there was "no clear suggestion of secondary gain or exaggeration on the testing." Tr. 694.

Defendant argues that there is substantial evidence in the record of secondary gain, pointing initially to evidence the ALJ himself commented on. Defendant also cites to other evidence as well, including a 2006 statement by Plaintiff made during an examination to determine the role his drug and alcohol history played in contributing to his PTSD symptoms, that he did not start excessive alcohol use until after returning from Vietnam. See Tr. 876, 996-97, 1035-37. This history conflicted with other statements he had made that he started drinking at eight years old, including regularly drinking at age twelve. Tr. 477, 483. The inference created is that Plaintiff deliberately misled the examiner in 2006 about his alcohol history because it would negatively affect his PTSD disability claim.

Plaintiff attempts to downplay the role of the secondary gain evidence in the VA records by noting that Dr. Duvall reviewed those same records. But, Plaintiff fails to recognize that Dr.

Duvall's comment that there was "no clear suggestion of secondary gain" was limited to "the testing." Tr. 694. Thus, Dr. Duvall's finding of no evidence of secondary gain on the testing does not negate the clear evidence of secondary gain found in the VA records. The ALJ appropriately considered that the record suggested secondary gain and that this undermined Dr. Duvall's opinion. The ALJ did not err in giving only partial weight to Dr. Duvall's opinion.

Second, Plaintiff argues that the ALJ erred by finding that maintaining a long-term marriage is inconsistent with social limits in the ability to respond appropriately to coworkers, supervisors, or the public, or to respond appropriately to work situations. Plaintiff suggests that the record as a whole shows that Plaintiff and his wife had difficulties in their marriage including screaming matches and communication problems, and that they contemplated separation. Additionally, Plaintiff argues that the record shows he had a lack of activity, socializing, and friendships, and struggled with anger issues. Plaintiff also takes issue with the ALJ's reliance on his SATP group participation as a reason for discounting Dr. Duvall's opinion. Plaintiff notes that his participation was court-ordered, the record shows he would not complete non-court mandated group programs, and that he reported feeling tense and threatened in group settings.

Defendant notes that Plaintiff has been married for more than thirty years and that the record at one point stated that Plaintiff had an "excellent support system with friends and SATP supports." Tr. 425. Further, there is evidence that Plaintiff joined a gym, went grocery shopping regularly, and attended church with his wife, all activities requiring that he be around other people. E.g., Tr. 398 (joined a friend's gym); 702 (wife's report that Plaintiff shops in stores at least twice per month). While the record shows that Plaintiff and his wife engaged in couples counseling at various times and experienced communication and other difficulties, e.g.,Tr. 881

(couples counseling in 2004 with Dennis Allison at the VA); Tr.584 (couples counseling again in 2006 with Allison at the VA); Tr. 326 (couples counseling session in January 2009 with Allison at the VA), they nonetheless remained together. Further, the record shows that counseling was effective. E.g., Tr. 874 (Oct. 2004 chart note stating that Plaintiff was "finding benefit in marital counseling"); Tr. 429 (Oct. 2007 chart note stating Plaintiff reported that "things are going well at home" and that Plaintiff was looking forward to resuming marriage counseling again).

Additionally, while the SATP group was court-ordered, the evidence shows that Plaintiff fully participated during his attendance. E.g., Tr. 397, 429, 433 (September 2007, October 2007, and February 2008 SATP Group Notes stating that Plaintiff "actively participated in group discussion"). In one SATP group meeting, Plaintiff also reported that he planned on attending a different group for "PCT" symptom management. Tr. 433. Although Plaintiff states that he was discharged from the SATP group due to a lack of engagement, that is not a fully accurate statement of the record. The chart note cited by Plaintiff states that Plaintiff completed the "SATP Continuing Care phase of the program on 3/3/08." Tr. 316. After that, he transitioned to the "Extended Care phase of the program." Id. In February 2009, his status was changed to inactive and on March 20, 2009, he was discharged due to lack of engagement during extended care. Tr. 315. Although Plaintiff is correct that he was discharged from SATP for lack of engagement, Plaintiff did complete the initial phase of the program and remained a part of the extended care portion for some period of time.

The ALJ rejected Dr. Duvall's extreme and marked limitations in social functioning because those limitations were inconsistent with the above-noted evidence. But, the ALJ validated some limitations in social functioning by limiting Plaintiff to only occasional

11 - OPINION & ORDER

interaction with coworkers and supervisors and no interaction with the public. While the ability to maintain a long-standing marriage that has weathered various storms is not necessarily the same as the ability to engage in social relationships outside of that context, it was not unreasonable for the ALJ to conclude that Plaintiff's marriage and other evidence of his social functioning including being a member of gym, going to church, shopping, and actively participating in the court-ordered SATP group, undermine Dr. Duvall's opinion that Plaintiff's social functioning limitations are extreme.

Third, Plaintiff argues that the ability to engage in work before an alleged onset date is not inconsistent with disability after that date. Plaintiff misunderstands the ALJ's reasoning. The ALJ did not reject Dr. Duvall's opinion based only on Plaintiff's ability to work before his alleged onset date. Instead, the rejection was based on the ability to work before that date combined with a finding that Plaintiff's symptoms had not worsened. Plaintiff does not challenge the ALJ's determination that his PTSD symptoms did not increase after 2004. As a result, the ALJ did not err in concluding that the ability to work in the past despite a severe impairment undermines an opinion that Plaintiff has extreme or marked limitations when the severity of the impairment has not significantly changed.

Finally, Plaintiff argues that the record as whole supports Dr. Duvall's opinion. Plaintiff points to the VA's 100% disability rating, state agency consultant findings of impaired social functioning, and records showing Plaintiff's abnormal mood and affect, psychomotor agitation, and difficulty communicating with others. The VA rating is addressed below. As for the other points, I agree with Defendant that Plaintiff offers a different interpretation of the record but does not establish that the ALJ's interpretation was unreasonable. Therefore, I must accept the ALJ"s

interpretation. E.g., Vasquez, 572 F.3d at 591 ("Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.") (internal quotation marks and brackets omitted).

II. VA Disability Rating

Next, Plaintiff argues that the ALJ erred by not properly considering the VA's 100% disability rating. In McCartney v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002), the Ninth Circuit held that although a VA rating of disability is not binding on the Social Security Administration (SSA), it is entitled to "great weight." Id. However, "the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." Id.

The ALJ in this case gave "little weight" to the VA's disability determination. Tr. 32. The ALJ noted that the VA and the SSA make disability determinations based on different laws and regulations. Id. As a result, the VA determination is not binding. Id. The ALJ explained that in this case, the VA determination was not based on a comprehensive evaluation of all of the evidence that was available to the ALJ. Id. The ALJ had the benefit of "the opinions of the agency psychologists, consulting evaluators, evidence of claimant's work history, and the input of the vocational expert[.]" Id. The ALJ also explained that the VA relied on the opinions of two physicians, Dr. Monkarsh and Dr. Bridenbaugh, that the ALJ rejected. Id.

Plaintiff notes that under McCartney, which recognized that the SSA and the VA use different laws and regulations to assess disability, Defendant must still give "great weight" to the VA rating. McCartney, 298 F.3d at 1076. Plaintiff contends that the ALJ's reasons for discounting the VA disability rating are not persuasive, specific, and valid.

13 - OPINION & ORDER

Plaintiff acknowledges that the VA did not have later evidence reviewed by the ALJ. But, Plaintiff argues that the ALJ rejected a significant portion of the subsequent medical opinions and it is illogical for the ALJ to reject the VA rating because the VA did not consider evidence that the ALJ himself rejected. The problem with this argument is first, the information before the ALJ when he issued his opinion included more than just medical opinions. It also included statements from Plaintiff and his wife describing their activities and vocational expert testimony tailored to the claimant's impairments and limitations rather than a general assessment of unemployability.

Second, the ALJ did not reject all of the subsequent medical opinions. For example, in discussing Dr. Thomas Carr, M.D.'s opinion, the ALJ rejected the statements in a letter written by Dr. Carr in February 2009 to support Plaintiff being excused from jury duty, that Plaintiff was "poorly tolerant of new social situations and would find it difficult to serve on a jury with a group of strangers." Tr. 30 (citing Tr. 322). The ALJ did not, however, expressly disregard other findings by Dr. Carr that in 2008, Plaintiff was a candidate for telemonitoring because he had intact cognitive function, was able to understand and follow directions, exhibited a willingness to try, and had a supportive other or care provider. Tr. 633-34. Id.

In another example, the ALJ had the benefit of the opinions of nonexamining psychologists Bill Hennings, Ph.D. and Frank Lahman, Ph.D. which addressed Plaintiff's mental functioning limitations including that Plaintiff should not be required to work within close proximity of the general public or coworkers. Tr. 988 (in an assessment of Plaintiff's social interaction limitations, Dr. Hennings found Plaintiff (1) moderately limited in the ability to interact with the general public; (2) not significantly limited in the abilities to ask simple

14 - OPINION & ORDER

questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, and to maintain socially appropriate behavior including adhering to basic standards of neatness and cleanliness; and (3) markedly limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes); Tr. 989 (Dr. Hennings's narrative summary stated that due to Plaintiff's PTSD and Adult ADD, he had the ability to maintain attention and concentration as long as he was limited to very short and simple tasks and is not required to frequently work within close proximity of others and further, that he should not be required to work in close proximity of the general public or other coworkers); Tr. 993 (Dr. Lahman affirming Dr. Hennings's assessment).

The ALJ partially rejected these opinions because records submitted after these practitioners' reviews showed that the ADHD diagnosis was not valid and further showed that Plaintiff's memory was above average on testing and that he had engaged in cognitively demanding tasks. Tr. 30. Nonetheless, the ALJ gave these opinions "some weight." Id. The ALJ obviously incorporated the "close proximity" limitations noted by Dr. Hennings and affirmed by Dr. Lahman because the RFC prohibits all interaction with the general public and allows only occasional interaction with coworkers and supervisors. Therefore, in rejecting the VA's 100% disability rating, the ALJ accurately found that the VA did not have the benefit of subsequent evidence which the ALJ considered. The ALJ's reasoning was not "illogical" as Plaintiff posits.

Finally, Plaintiff argues that although the ALJ rejected two medical opinions relied on by the VA, the VA's determination was based on evidence outside of those opinions including VA examinations and extensive records. Thus, the argument goes, the ALJ's rejection of only a

portion of the evidence relied on by the VA does not provide a valid basis for the ALJ's giving the VA's disability determination only little weight. While the VA may have considered additional evidence, there is no dispute that its disability rating was based, at least in part, on the medical opinions rejected by the ALJ. Given that Plaintiff does not challenge the ALJ's rejection of those two opinions in this appeal, it was not error for the ALJ to discredit the VA's disability rating for that reason. Rather, the ALJ gave specific, valid, and persuasive reasons in support of his giving limited weight to the VA decision.

## CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this \_\_11\_\_ day of \_\_April\_\_, 2017

_____
Marco A. Hernandez
United States District Judge